**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IVAN YNFANTE,** | : | **No. 3:13cv767** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA;** | : | |
| **ROBERT WOODSON, III; JASON** | : | |
| **MADRIGAL; DAVID CLARK and** | : | |
| **JOHN DOES 1-7,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the court for disposition is the defendants' motion to dismiss, or in the alternative, motion for summary judgment.  (Doc. 42).  The motion is fully briefed and ripe for disposition.

**Background**

This case arises from Plaintiff Ivan Ynfante's (hereinafter "plaintiff") interactions with Defendants United States of America, Robert Woodson III, Jason Madrigal, David Clark and John Does 1-7 (collectively "defendants").

In 2005, plaintiff, a resident alien, was living in New York City.[1]  (Doc. 35, Am. Compl. (hereinafter "Am. Compl.") ¶ 1).  On September 28, 2005, plaintiff was convicted of a New York State drug offense.[2]  (Id. ¶¶ 16-17).  As

---

[1]  Plaintiff is a citizen and national of the Dominican Republic.  (Am. Compl. ¶ 1).

[2]  Plaintiff plead guilty to section 221.10 of New York's Penal Code, which states that a person is guilty of criminal possession of marijuana in the fifth degree when he knowingly and unlawfully possesses:

a result of his New York drug conviction, New York City Immigration and Customs Enforcement Officers detained plaintiff.  (Id.)  On October 3, 2005, however, the Department of Homeland Security released plaintiff, finding his detainer legally insufficient to warrant removal.  (Id. ¶ 17).

Almost five years later, on August 19, 2010, plaintiff was incarcerated at the Luzerne County Correctional Facility on charges of simple assault, harassment and disorderly conduct.  (Doc. 69-2, Form I-213 record of deportable alien at 4).  While incarcerated in Luzerne County, Defendant Woodson, a Department of Homeland Security Immigration and Customs Enforcement (hereinafter "DHS ICE") Officer, reviewed a list of Luzerne County Correctional Facility inmates and determined that plaintiff had a prior criminal conviction subjecting him to removal under 8 U.S.C. § 1227(a)(2)(B)(i).[3]  (Am. Compl. ¶¶ 5, 15-16).

---------------------

> 1. mari[j]uana in a public place, as defined in section 240.00 of this chapter, and such marihuana is burning or open to public view; or
>
> 2. one or more preparations, compounds, mixtures or substances containing mari[j]uana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than twenty-five grams.

N.Y. PENAL § 221.10.

[3] Section 237(a)(2)(B)(i) of the Immigration and Naturalization Act provides:

Defendant Woodson conferred with another ICE Officer, Defendant Jason Madrigal, and together they requested a warrant to arrest plaintiff.  (Id. ¶ 18).  On August 23, 2010, Defendant David Clark, a DHS ICE Supervisor, issued an arrest warrant and a Notice to Appear (hereinafter "NTA"), which required plaintiff to appear before an immigration judge.  (Id. ¶¶ 19-20).  Upon release from the Luzerne County Correctional facility, unknown DHS ICE Officers arrested plaintiff and held him in ICE custody at the Pike County Correctional facility from August 23, 2010, to March 28, 2011.  (Id. ¶¶  21, 24).

In November 2010, while at the Pike County Correctional Facility (hereinafter "PCCF"), plaintiff suffered an injury to his right ring finger and fifth finger after an altercation with another inmate.  (Am. Compl ¶ 25; Doc. 65-1, Decl. of Ivan Ynfante (hereinafter "Ynfante Decl.") ¶ 12).  During the altercation, unnamed correctional officers intervened and shackled plaintiff.  (Ynfante Decl. ¶ 12).  Plaintiff then fell, causing serious injury to his two fingers.  (Am. Compl. ¶¶ 25, 35-39; Ynfante Decl. ¶ 12).

Accordingly, plaintiff filed a fourteen (14) count complaint (Doc. 1) on

---

Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable. 8 U.S.C. § 1227(a)(2)(B)(i).

3

March 25, 2013, and an amended complaint on December 16, 2013 (Doc.

35).  Plaintiff's amended complaint asserts constitutional tort causes of action

pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of

Narcotics, 403 U.S. 388 (1971) (hereinafter "Bivens" ), and intentional tort

claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 (hereinafter

"FTCA").  Defendants filed a motion to dismiss and/or motion for summary

judgment seeking the dismissal of all claims within plaintiff's amended

complaint.  The parties then briefed the issues bringing the case to its present

posture.

**Jurisdiction**

Because plaintiff brings suit to vindicate his constitutional rights and

under the FTCA, the court has jurisdiction under 28 U.S.C. § 1331 ("The

district courts shall have original jurisdiction of all civil actions arising under

the Constitution, laws, or treaties of the United States.").

**Standard of Review**

Defendants filed their motion to dismiss plaintiff's complaint pursuant

the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1)

provides that a court may dismiss a complaint for "lack of subject-matter

jurisdiction."  "Challenges to subject matter jurisdiction under Rule 12(b)(1)

may be 'facial' or 'factual.'"  Turicentro v. Am. Airlines Inc., 303 F.3d 293, 300

4

n.4 (3d Cir. 2002).  A facial attack serves to "contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." Id.  On the other hand, if the attack is factual, the court "accords plaintiff's allegations no presumption of truth.  In a factual attack, the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings."  Id.

The defendants' Rule 12(b)(1) motion is a factual attack on the court's jurisdiction, because it challenges not merely "an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites" of federal law.  United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007).  As such, plaintiff bears the burden of establishing jurisdiction, and unlike other familiar motions, no presumptive truthfulness attaches to the allegations in the complaint. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Moreover, the court may consider evidence outside the pleadings because the court is the "ultimate finder of fact" on jurisdictional questions.  S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 343 (3d Cir. 2012).

The defendants have also filed a motion to dismiss plaintiff's complaint

under Federal Rule of Civil Procedure 12(b)(6).[4]  The court tests the

sufficiency of the complaint's allegations when considering a Rule 12(b)(6)

motion.  All well-pleaded allegations of the complaint must be viewed as true

and in the light most favorable to the non-movant to determine whether,

"'under any reasonable reading of the pleadings, the plaintiff may be entitled

to relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988)

(quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir.

1985)).  The plaintiff must describe "'enough facts to raise a reasonable

expectation that discovery will reveal evidence of' [each] necessary element"

of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d

224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556

(2007)).  Moreover, the plaintiff must allege facts that "justify moving the case

beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In

evaluating the sufficiency of a complaint the court may also consider "matters

of public record, orders, exhibits attached to the complaint and items

appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court

does not have to accept legal conclusions or unwarranted factual inferences.

---

[4]  While defendants support their 12(b)(6) motion with evidentiary
materials outside the pleadings, the court does not rely on these materials to
resolve the instant motion.

See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

Plaintiff's claims arise from two separate events.  First, plaintiff asserts several claims arising from the defendants' decision to commence removal proceedings against him in August 2010.  Second, plaintiff asserts three claims regarding his treatment in November 2010 while incarcerated at the Pike County Correctional Facility (hereinafter "PCCF").  The court will address each category of claims *in seriatim*.

**I. Removal claims**[5]

The defendants seek dismissal of plaintiff's removal claims pursuant to Federal Rule of Civil Procedure 12(b)(1), contending federal immigration law strips the court's subject matter jurisdiction because the removal claims derive

---

[5]  Plaintiff asserts twelve (12) causes of action arising from the defendants' decision to commence removal proceedings against him. Counts 1-5 state Bivens claims for violations of plaintiff's constitutional rights under the 4th, 5th, 6th, 8th and 14th Amendments.  (Am. Compl. ¶¶ 28-31).  Counts 7-10 aver FTCA claims for invasion of privacy, false arrest, false imprisonment and malicious prosecution.  (Id. ¶¶ 40-41).  Counts 12-14 state FTCA claims for negligence, negligent hiring, negligent retention, negligent training, intentional infliction of emotional distress and negligent infliction of emotional distress.  (Id. ¶¶ 42-54).  The court will refer to these claims as plaintiff's "removal claims."

from the defendants' decision on August 23, 2010 to commence removal proceedings against plaintiff.  Plaintiff counters that subject matter jurisdiction exists because the defendants did not commence removal proceedings on August 23, 2010.  Rather, defendants' August 23, 2010 decision re-instituted prior removal proceedings that had been terminated in September 2005.

Specifically, plaintiff asserts that the August 23, 2010 warrant and NTA were obtained without probable cause.  (Id. ¶ 22).  Further, plaintiff argues that defendants unlawfully detained him until March 28, 2011, when an immigration judge terminated proceedings against him.  (Id. ¶ 24).  Plaintiff also avers defendants precluded him from posting post bail and prevented him from retrieving his vehicle, which local authorities impounded because of his detention.  (Id. ¶¶ 23-24).

Federal law provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [relevant provisions of the INA]."  8 U.S.C. § 1252(g) (hereinafter "section 1252(g)").  The Supreme Court has stated that section 1252(g) "focus[es] special attention upon the initiation or prosecution of various stages in the deportation process."  Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 483 (1999).  Specifically,

section 1252(g) "applies only to three discrete actions that the Attorney

General may take: his decision or action [to] commence proceedings,

adjudicate cases, or execute removal orders." Id. at 482 (internal quotation

marks omitted).

In short, section 1252(g) precludes federal courts' subject matter

jurisdiction over **any** claim when the Attorney General's decision or action to

commence proceedings is the basis of the claim. See Adegbuji v. Fifteen ICE

Agents, 169 F. App'x 733, 735 (3d Cir. 2006) (noting that section 1252(g)

precludes Bivens claims "arising out of the decision to commence removal

proceedings."); El Badrawi v. Dept. of Homeland Sec., 579 F. Supp. 2d 249,

265 (E.D. Conn. 2008) (stating that section 1252(g) precludes plaintiff's FTCA

claims arising from the issuance of a Notice to Appear).

In the instant matter, plaintiff's removal claims involve the defendants'

decision to commence removal proceedings against him and therefore, are

precluded under 1252(g).  While plaintiff characterizes his challenge as the

re-institution of his 2005 proceedings, he is actually challenging the

defendants' decision to commence removal proceedings.  In essence, he

wishes to invade defendants' prosecutorial discretion and determine himself

how defendants should proceed against him.  Defendants' choice to

commence removal proceedings is within the discretion of the agency and

9

cannot be reviewed by the courts.  Reno, 525 U.S. 471, 486-87; see also

Rodriguez v. Att'y Gen. of U.S., 414 F. App'x 484, 488 (3d Cir. 2011) (stating

that the Attorney General has prosecutorial discretion regarding whether and

when it commences removal proceedings against an alien).

Moreover, plaintiff's argument that the August 23, 2010 NTA merely

amounted to a re-institution of his 2005 immigration proceedings is without

merit for two reasons.  First, plaintiff cites no statute, regulation or case

supporting his conclusory assertion that the 2010 NTA re-instituted his 2005

immigration proceedings.  Second, Defendant Woodson did not seek to re-

open his prior immigration case.  Rather, Defendant Woodson initiated a new

deportable alien record in 2010.  (Id. ¶¶ 15-16, 18); (Doc. 69-2, Ex. B, Form I-

213 record of deportable alien dated Aug. 23, 2010).  Accordingly, plaintiff has

failed to establish federal subject matter jurisdiction regarding his removal

claims and they will be dismissed.  Mortensen, 549 F.2d at 891.[6]

## II.  Remaining **Bivens** and FTCA claims

Plaintiff asserts three additional claims arising from an injury allegedly

sustained while incarcerated at the Pike County Corrections Facility in

---

[6]  The court will dismiss these claims with prejudice as an amendment
would be futile.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)
(holding that district courts must permit a curative amendment within a set
period of time unless such an amendment would be inequitable or futile).

November 2010.  Plaintiff's claims are a: (1) <u>Bivens</u> Eighth Amendment excessive force; (2) <u>Bivens</u> Eighth Amendment medical indifference and (3) FTCA state law medical negligence claim.

<u>Bivens</u> and FTCA claims have very different requirements in terms of the parties that may properly be named as defendants.  The FTCA allows federal inmates to sue the **United States** for injuries sustained while incarcerated.  28 U.S.C. § 2674.  In this regard, "[t]he FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Defendants liable in tort as a private individual would be under like circumstances.'"  <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 700 (2004) (quoting <u>Richards v. United States</u>, 369 U.S. 1, 6 (1962)); <u>CNA v. United States</u>, 535 F.3d 132, 138 (3d Cir. 2008).

A court, however, may not entertain an FTCA claim against "any employee of the Defendants while acting within the scope of his office or employment."  28 U.S.C. § 2679(b)(1); <u>see also</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 476 (1994).  Rather, the only proper defendant in an FTCA suit is the United States itself.  28 U.S.C. §§ 2671-80.

In contrast to FTCA actions, a <u>Bivens</u> claim can only be asserted against individual officials.  Indeed, it is well-settled that <u>Bivens</u> actions against the United States–and, by extension, against federal agencies or

11

officials sued in their official capacity–are barred by sovereign immunity,

absent an explicit waiver of that immunity.  Meyer, 510 U.S. at 483 (1994);

Jaffee v. United States, 592 F.2d 712, 717 (3d Cir. 1979); Bell v. Rossott, 227

F. Supp. 2d 315, 320 (M.D. Pa. 2002) (dismissing claim against individual

federal defendants sued in their official capacity because the claims are

essentially made against the United States).  Therefore, sovereign immunity

precludes Bivens actions from being asserted against the United States, or a

federal agency.

Ergo, the court will dismiss the individual defendants from plaintiff's

FTCA claims and the United States from plaintiff's Bivens claims.[7]

Moreover, a Bivens civil rights action has the same standard as a 42

U.S.C. § 1983 civil rights action.  Brown v. Philip Morris Inc., 250 F.3d 789,

800 (3d Cir. 2001).  To be personally liable under Bivens, a defendant cannot

merely be liable under the theory of *respondeat superior*, but rather "a plaintiff

must plead that each Defendants-official defendant, through the official's own

individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S.

662, 675-76 (2009).

---

[7]  The court will dismiss the individual defendants from plaintiff's FTCA claim and the United States from plaintiff's Bivens claim with prejudice as an amendment would be futile.  See Alston, 363 F.3d at 235 (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

Thus, for plaintiff's amended complaint to be sufficient, plaintiff's <u>Bivens</u> claims must assert facts plausibly demonstrating a violation of a federal right **and** that either: (1) defendants directly participated in violating plaintiff's federal rights; (2) defendants directed others to violate plaintiff's federal rights; or (3) defendants were the people in charge of plaintiff's incarceration and acquiesced as their subordinates violated plaintiff's federal rights. <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010).  With these precepts in mind, the court turns to plaintiff's first <u>Bivens</u> claim.

## A. <u>Bivens</u>: Denial of medical care

Plaintiff asserts a <u>Bivens</u> denial of medical care claim under the Eighth Amendment.  The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992).  To prevail on an Eighth Amendment denial of medical care claim, an inmate must demonstrate: (1) a deprivation that is objectively sufficiently serious; and (2) a sufficiently culpable state of mind of the defendant official.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

To establish the first element, the medical need and the alleged deprivation of care "must be objectively, sufficiently serious."  <u>Id.</u> (quotation and citations omitted).  The "concept of a serious medical need . . . has two

components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." Colburn, 946 F.2d at 1023.  A prisoner's medical condition must "be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death" and one that either "has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Id.

To establish the second element, the plaintiff must demonstrate that the defendant acted with deliberate indifference.  A prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  The Supreme Court has stated that "deliberate indifference describes a state of mind more blameworthy than negligence," but that the deliberate indifference standard is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835.

In the instant matter, plaintiff asserts that he suffered an injury in November 2010 at the Pike County Correctional Facility. (Am. Compl. ¶ 25).

14

Plaintiff claims that the "[d]efendants, their nurses, technicians and other personnel at [the] Pike County Correctional Facility undertook to treat plaintiff for an injury to his right ring finger . . . ." (Id. ¶ 35).[8]  This treatment, however, "caused physical injuries and damage to plaintiff" that resulted "due to the deliberate indifference of defendants . . . to the plaintiff's medical needs."  (Id. ¶¶ 37-38).

Plaintiff's assertions, however, fail to support the conclusion that plaintiff's medical needs were indeed serious and defendants were aware of the needs.  Iqbal, 556 U.S. at 678.  Furthermore, no allegation supports a conclusion that defendants were deliberately indifferent to plaintiff's serious medical needs.  Id.  Because the complaint's allegations are not sufficient for the court to analyze plaintiff's Bivens denial of medical care claim, the court will dismiss this claim without prejudice to plaintiff filing an amended complaint.[9]

---

[8]  Plaintiff names multiple John Doe defendants.  These defendants allegedly were "agents and/or employees of the USA and/or DHS working in the office of ICE or working at the Pike or Luzerne County Correctional Facilities."  (Am. Compl. ¶ 8).  "Doe defendants 'are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.'" Hindes v. F.D.I.C., 137 F.3d 418, 155 (3d. Cir. 1998) (quoting Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 36 (E.D. Pa.1990).  At the present time, the court will allow the Doe defendants to remain.

[9]  The scant amount of facts in plaintiff's brief in opposition to the instant motion may demonstrate that he could amend his complaint to overcome the

## B. <u>Bivens</u>: Eighth Amendment excessive force

Plaintiff next asserts an Eighth Amendment excessive force claim arising from the same November 2010 incident.  In an excessive force case, the court assesses whether prison officials applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  <u>Hudson</u>, 503 U.S. at 6.  A prisoner need not show significant injury; however, an objectively *de minimis* use of force is insufficient to establish an Eighth Amendment violation.  <u>Id.</u> at 9-10.

The Supreme Court has noted the following factors to determine whether a correctional officer used excessive force in contravention of the Eighth Amendment, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a

---

deficiencies noted herein, with respect to some of the defendants.  Plaintiff will, therefore, have an opportunity to file a second amended complaint.

To survive a motion to dismiss, however, plaintiff must allege **personal involvement**.  Specifically, plaintiff must assert that each individual defendant was aware of plaintiff's medical condition and that each defendant (1) directly participated in violating plaintiff's federal rights; (2) directed others to violate plaintiff's federal rights; or (3) were the people in charge of plaintiff's incarceration and acquiesced as their subordinates violated plaintiff's federal rights.  <u>Santiago</u>, 629 F.3d at 129.

forceful response.  <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986); <u>see also</u>

<u>Giles v. Kearney</u>, 571 F.3d 318, 327 (3d Cir. 2009) (same).

The entirety of plaintiff's Eighth Amendment excessive force claim

states: "In November 2010, while plaintiff was held in custody he suffered an

injury to his right finger due to excessive force applied by corrections officers

in detaining plaintiff for which plaintiff did not receive proper medical care . . .

." (Am. Compl. ¶ 25).  This conclusory averment fails to support an Eighth

Amendment excessive force claim for four reasons.

First, plaintiff fails to address defendants' culpable state of mind.

Second, plaintiff does not discuss the need for application of force nor the

relationship between the need and the amount of force used.  Third, no

detailed description of the injury sustained is given.  Fourth, plaintiff fails to

address whether defendants made any effort to temper the severity of their

response.  In short, the amended complaint's allegations are not sufficient for

the court to analyze plaintiff's Eighth Amendment excessive force claim.

<u>Iqbal</u>, 556 U.S. at 678.  As such, the court will dismiss this claim without

prejudice to plaintiff filing an amended complaint.[10]

---

[10]  The entirety of plaintiff's amended complaint may demonstrate that
he could amend his complaint to overcome the deficiencies noted herein, with
respect to some of the defendants.  Plaintiff will, therefore, have an
opportunity to file a second amended complaint.
     To survive a motion to dismiss, however, plaintiff must allege **personal**

## C.  FTCA: medical malpractice[11]

Plaintiff asserts a state law medical malpractice claim under the FTCA

contending the defendants failed to appropriately treat his November 2010

finger injury, causing him harm.  Defendants seek dismissal of plaintiff's

medical malpractice claim because plaintiff failed to file a certificate of merit

(hereinafter "COM") required by Pennsylvania Rule of Civil Procedure

1042.3.[12]

Rule 1042.3 requires that in an action "based upon an allegation that a

licensed professional deviated from an acceptable professional standard" the

plaintiff must file a COM within sixty (60) days after filing the complaint.  PA.

R. CIV. P. 1042.3(a).  The Rule 1042.3 certificate must certify that either:

> (1) an appropriate licensed professional has supplied a written
> statement that there exists a reasonable probability that the
> care, skill or knowledge exercised or exhibited in the treatment,

─────────────────────

**involvement** regarding his Eighth Amendment excessive force claim.
Specifically, plaintiff must state what level of force was used and that each
defendant: (1) directly used excessive force; (2) directed others to use
excessive force; or (3) were the people in charge of plaintiff's incarceration
and acquiesced as their subordinates used excessive force.  <u>Santiago</u>, 629
F.3d at 129.

[11]  The court construes paragraph twenty-five (25) of the amended
complaint, in addition to the factual averments in Counts 12-14, to state a
medical negligence claim under the FTCA.  (Am. Compl. ¶¶ 25, 42-54).

[12]  Plaintiff's brief in opposition to the instant motion fails to address
defendants' certificate of merit argument.

practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

PA. R. CIV. P. 1042.3(a)(1)-(3). Rule 1042.3 is a substantive state law that federal district courts must apply. Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011); Cuevas v. United States, 580 F. App'x 71, 75 (3d Cir. 2014).

Plaintiff has not submitted a Rule 1042.3 certificate of merit, identified any medical expert or submitted a report from any medical expert. Additionally, plaintiff has failed to establish that expert testimony is unnecessary. Moreover, plaintiff has not shown a reasonable excuse for his failure to comply with Rule 1042.3. Accordingly, the court will dismiss plaintiff's medical malpractice claim under the FTCA.[13]

---

[13] The court will deny this claim with prejudice as an amendment would be futile. See Alston, 363 F.3d at 235 (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

19

**Conclusion**

For the above-stated reasons, the following matters will be dismissed with prejudice: Count 1–Fourth Amendment unlawful detention; Count 2–Fifth Amendment denial of due process and double jeopardy; Count 3–Sixth Amendment ineffective assistance of counsel and speedy trial violation; Count 4–Eighth Amendment cruel and unusual punishment; Count 5–Fourteenth Amendment denial of due process; Count 7–invasion of privacy; Count 8–false arrest; Count 9–false imprisonment; Count 10–malicious prosecution; Count 12–negligence, negligent hiring, negligent retention and negligent training; Count 13–intentional infliction of emotional distress; Count 14–negligent infliction of emotional distress and plaintiff's medical negligence claim asserted in paragraph 25.  The court will also dismiss the following claims without prejudice to plaintiff filing an amended complaint: Count 6–Bivens medical indifference against the individual defendants and Count 11–Bivens excessive force against the individual defendants.[14]   Finally, the

---

[14]  Plaintiff's Bivens medical indifference claim must assert that each individual defendant was aware of plaintiff's medical condition and that each defendant (1) directly participated in violating plaintiff's federal rights; (2) directed others to violate plaintiff's federal rights; or (3) were the people in charge of plaintiff's incarceration and acquiesced as their subordinates violated plaintiff's federal rights.  Santiago, 629 F.3d at 129.

Similarly, plaintiff's Bivens excessive force claim must state what level of force was used and that each defendant: (1) directly used excessive force; (2) directed others to use excessive force; or (3) were the people in charge of

court will dismiss the United States as a defendant in Counts 6 and 11.  An

appropriate order follows.

Date:   02/12/2015                           s/ James M. Munley
                                             **JUDGE JAMES M. MUNLEY**
                                             **United States District Court**

---

plaintiff's incarceration and acquiesced as their subordinates used excessive
force.  Santiago, 629 F.3d at 129.